**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-00783 MMM (MRWx) | Date | July 8, 2014 |

| | |
|---|---|
| Title | *Walter D. Shaw Jr. "PRO SE" v. Specialized Loan Servicing, LLC* |

Present: The Honorable    MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **Order Granting *Ex Parte* Application for Preliminary Injunction**

On April 21, 2014, *pro se* plaintiff Walter Shaw filed this action against Specialized Loan Servicing, LLC ("Specialized").[1]  On May 12, 2014, Shaw filed an *ex parte* application for preliminary injunction,[2] and contemporaneously filed a request for a notice of *lis pendens*.[3]  In his application, Shaw sought to enjoin the sale of his Norco, California home at foreclosure; he stated the foreclosure sale was scheduled to take place on June 4, 2014.[4]  On May 16, 2014, the court denied Shaw's *ex parte* application and request to file a notice of *lis pendens* because it did not appear that he had effectively served the summons and complaint on Specialized.[5]  On May 23, 2014, Shaw filed

---

[1]Complaint, Docket No. 1 (Apr. 21, 2014).

[2]*Ex Parte* Application for Preliminary Injunction, Docket No. 6 (May 12, 2014).

[3]Request for Notice of *Lis Pendens*, Docket No. 10 (May, 12, 2014).

[4]Memorandum of Points and Authorities in Support of *Ex Parte* Application for Preliminary Injunction, Docket No. 7 (May 12, 2014).

[5]Minutes (In Chambers) Order Denying *Ex Parte* Application for Preliminary Injunction; Denying Request for Notice of *Lis Pendens*, Docket No. 11 (May 16, 2014).

a second *ex parte* application for preliminary injunction,[6] which again sought to enjoin the June 4, 2014 sale of his home.[7]  In a June 2, 2014 order, the court found that Shaw had perfected service, but denied his application because he had failed to adduce evidence that there was a likelihood of imminent, irreparable harm or that he would succeed on the merits of his claims.[8]  Shaw also filed a second request for notice of *lis pendens*,[9] which the court denied on June 4, 2014.[10]  On June 18, 2014, Shaw filed a third *ex parte* application for preliminary injunction seeking to enjoin the sale of his home,[11] which has been postponed to July 9, 2014.[12]  The court denied the application on July 3, 2014 because Shaw failed to demonstrate a likelihood of success on the merits of his claims.[13]  On July 7, 2014, Shaw filed a fourth *ex parte* application for preliminary injunction.[14]  Shaw states that the sale remains scheduled for July 9, 2014.[15]

---

[6]*Ex Parte* Application for Preliminary Injunction, Docket No. 15 (May 23, 2014).  See also Memorandum of Points and Authorities in Support of *Ex Parte* Application for Preliminary Injunction, Docket No. 16 (May 23, 2014).

[7]Application at 1-2.

[8]In Chambers Order Denying *Ex Parte* Application for Preliminary Injunction, Docket No. 22 (June 2, 2014).

[9]Request for Notice of Lis Pendens, Docket No. 14 (May 23, 2014).

[10]Text Only Entry Denying *Lis Pendens*, Docket No. 23 (June 4, 2014).

[11]*Ex Parte* Application for Preliminary Injunction, Docket No. 27 (June 18, 2014).

[12]Memorandum of Points and Authorities, Docket No. 29 (June 18, 2014); Declaration in Support of *Ex Parte* Application for Preliminary Injunction, Docket No. 28 (June 18, 2014), ¶ 2.

[13]In Chambers Order Denying *Ex Parte* Application for Preliminary Injunction ("July 3 Order"), Docket No. 33 (July 3, 2014).

[14]Memorandum of Point[s] and Authorities in Support of *Ex Parte* Application for Preliminary Injunction ("Memo") (July 7, 2014).

[15]*Id.* at 2; Declaration in Support [of] *Ex Parte* Application for Preliminary Injunction ("Shaw Decl.") (July 7, 2014), ¶ 2.

# I. BACKGROUND

## A.      Factual Background

On March 10, 2006, Shaw obtained a $986,000 mortgage loan from Option One Mortgage Corporation.[16]  The loan was secured by a promissory note and deed of trust on Shaw's home in Norco, California.[17]  The deed of trust listed Shaw as trustor, Premier Trust Deed Services, Inc. as trustee, and Option One Mortgage Corporation as beneficiary.[18]  On June 19, 2007, a notice of default and election to sell under deed of trust was recorded, stating that Shaw was $27,114.30 in arrears on his mortgage payments as of June 16, 2007.[19]  On August 18, 2009, Shaw executed a loan modification agreement, which was recorded on September 21, 2009.[20]  On September 4, 2009, a notice of rescission was recorded, cancelling the notice of default issued in June 2007.[21]

On October 9, 2009, Shaw filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California; he purportedly received a discharge on February 2, 2010.[22]  Shaw alleges that the property loan was "not part of" his Chapter 7 bankruptcy discharge.[23]  He asserts that while the bankruptcy proceedings were pending, he learned that his mortgage payments were not being received, accepted, and/or applied by Specialized, and that Specialized had revoked his authorization to access online loan account information, check balances, and make payments.[24]  Shaw states that Specialized also ceased sending him monthly mortgage

---

[16]Complaint, ¶ 2; Request for Judicial Notice in Support of Specialized Loan Servicing LLC's Opposition to Plaintiff's *Ex Parte* Application for Preliminary Injunction ("RJN"), Docket No. 32 (June 19, 2014), Exh. 1.  The court took judicial notice of six documents related to this action in its July 3 Order.  (July 3 Order at 3.)

[17]Complaint, ¶ 2; RJN, Exh. 1.

[18]RJN, Exh. 1.

[19]RJN, Exh. 2.

[20]RJN, Exh. 3.

[21]RJN, Exh. 4.

[22]Complaint, ¶ 3.

[23]*Id.*

[24]*Id.*

statements.[25]  He asserts that every time he contacted Specialized, it advised him that according to its records, Shaw's property was part of the bankruptcy discharge, even though this was not the case.[26]

On November 8, 2013, a notice of default and election to sell under deed of trust was recorded, stating that Shaw was $63,035.01 in arrears as of November 6, 2013.[27]  On December 27, 2013, Shaw began to negotiate a loan modification with Specialized.[28]  Specialized allegedly gave him the "run around" by requiring that he repeatedly resubmit documents, even though he had already submitted all of the documents requested in the loan modification package.[29]  On February 18, 2014, Shaw received a letter from Specialized stating that his application was missing two documents – a 4506T and Shaw's bank statements.[30]  That same day, Shaw contacted Specialized regarding the missing documents.  He was told that the documents had in fact been received but were illegible; Shaw asserts that he then faxed new copies of the documents to Specialized.[31]  On February 19, 2014, Shaw called Specialized.  A representative purportedly told him the fax had been received, and no other documents were missing.[32]

On March 7, 2014, Shaw received a notice of trustee's sale, stating that a sale would be held on March 28, 2014.[33]  Shaw called Specialized to inquire why he had received the notice, and was told that section 6a of the 4506T was not legible.[34]  Shaw resubmitted the 4506T.[35]  On March 11,

---

[25]*Id.*

[26]*Id.*

[27]*Id.*; RJN, Exh. 5.

[28]Complaint, ¶ 5.

[29]*Id.*, ¶¶ 5, 10.

[30]*Id.*, ¶ 6.

[31]*Id.*, ¶ 7.

[32]*Id.*, ¶ 8.

[33]*Id.*, ¶ 9; RJN, Exh. 6.

[34]Complaint, ¶ 9.

[35]*Id.*

2014, Shaw called Specialized to confirm that it had received the 4506T, and was told he had to resubmit his bank and retirement statements.[36]

On March 19, 2014, Shaw again called Specialized to verify that his loan modification application was complete; he was advised that it was.[37] When Shaw expressed concern about the imminent trustee's sale, he was allegedly told that, as a matter of policy, Specialized did not stop the foreclosure process even if a loan modification package had been submitted and was complete. Shaw was assured, however, that the sale would be delayed.[38] Shaw then received a letter stating that the trustee's sale had been postponed to April 30.[39] Shaw again called Specialized to ask whether the sale would be postponed indefinitely until a decision on the loan modification application had been made; he was purportedly told that "[w]e usually do not stop foreclosure activity unless the review comes back positive."[40]

## II. DISCUSSION

### A.   Legal Standard Governing Issuance of Preliminary Injunctions

A "preliminary injunction is an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 676 (2008), and a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Such a showing requires that the plaintiff establish that he is "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. See *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest"). See also *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest,'" quoting *Winter*, 555 U.S. at 20); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

---

[36]*Id.*

[37]*Id.*, ¶ 11.

[38]*Id.*

[39]*Id.*

[40]*Id.*, ¶ 12.

2009) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits," citing *Winter*, 555 U.S. at 20); *Timbisha Shoshone Tribe v. Kennedy*, 687 F.Supp.2d 1171, 1182 (E.D. Cal. 2009) ("Pursuant to *Winter*, [p]laintiffs must make a clear showing that they are likely to succeed on the merits").

> **B.      Whether Shaw Has Demonstrated that He Is Entitled to Preliminary Injunctive Relief**

> **1.      The Likelihood that Shaw Will Suffer Irreparable Harm**

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. *Winter*, 555 U.S. at 22; *American Trucking Associations*, 559 F.3d at 1052; see also 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1, p. 139 (2d ed.1995) (stating that an applicant must demonstrate that in the absence of preliminary relief, he "is likely to suffer irreparable harm before a decision on the merits can be rendered").

It is not enough that the claimed harm be irreparable; it must be imminent as well. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Los Angeles Memorial Coliseum v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). "[E]stablishing a threat of irreparable harm in the indefinite future is not enough." *Amylin Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 456 Fed. Appx. 676, 679 (9th Cir. Oct. 31, 2011) (Unpub. Disp.); see also *Cal. Dump Truck Owners Ass'n v. Nichols*, No. 11–cv–00384–MCE–GGH, 2012 WL 273162, *3 (E.D. Cal. Jan. 30, 2012) (quoting *Amylin*). Speculative injury does not constitute irreparable injury that warrants entry of a temporary restraining order or preliminary injunction. *Carribean Marine Servs.*, 844 F.2d at 674 (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)).

"A plaintiff must do more than merely allege imminent harm . . . ; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.* (emphasis original). Plaintiff must make this showing by adducing probative evidence. *Am. Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing the entry of a preliminary injunction because the movant had adduced no evidence of irreparable harm); *Bell Atlantic Business Systems, Inc. v. Storage Tech. Corp.*, No. C–94–0235, 1994 WL 125173, *2-4 (N.D. Cal. Mar. 31, 1994) (denying a motion for preliminary injunction because the movant had not adduced sufficient evidence of irreparable harm). Conclusory affidavits are insufficient to demonstrate irreparable harm. *Am. Passage Media Corp.*, 750 F.2d at 1473.

Shaw contends that if the court does not issue a preliminary injunction, his home will be sold at foreclosure.[41]  He states that if he loses his home, his family will have nowhere to stay and his children will need to leave their schools.[42]  Shaw also states that he raises domesticated game birds and farm animals at his home, and that the loss of his home will leave him with nowhere to put the animals.[43]  The loss of one's home generally qualifies as irreparable injury.  See *Singh v. Bank of America, N.A.*, No. 2:13–cv–00729-MCE–AC, 2013 WL 1759863, *3 (E.D. Cal. Apr. 24, 2013) ("Plaintiff has demonstrated that Plaintiff will suffer 'irreparable harm' if he loses his home because "[he] and [his] family will have nowhere to go and nowhere to stay. . . . [His] children will need to leave their schools'"); *Demarest v. Quick Loan Funding, Inc.*, No. CV09-01687 MMM (SSx), 2009 WL 940377, *9 (C.D. Cal. Apr. 6, 2009) ("The loss of one's personal residence due to foreclosure constitutes irreparable injury"); *Nichols v. Deutsche Bank Nat. Trust Co.*, No. 07cv2039-L(NLS), 2007 WL 4181111, *3 (S.D. Cal. Nov. 21, 2007) ("The imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm"); see also *Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988) (holding that the sale at foreclosure of real property constitutes irreparable harm).[44]

---

[41]Memo at 13; Shaw Decl., ¶ 2.

[42]Shaw Decl., ¶ 2.

[43]*Id.*, ¶ 8.

[44]Shaw's assertion that he will suffer economic harm as a result of his inability to continue raising game birds and farm animals does not demonstrate that he will suffer irreparable harm, as typically, economic injury alone is insufficient to show irreparable harm.  *Mclean v. Aurora Loan Servicing*, No. 11cv0455–LAB (NLS), 2011 WL 4635027, *2 (S.D. Cal. Oct. 5, 2011) ("[E]conomic injury, by itself, does not constitute irreparable harm," citing *Rent–A–Center, Inc. v. Canyon TV & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)); see *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938-39 (9th Cir. 1987) ("[T]emporary economic loss alone generally is not a basis for injunctive relief"); *Drakes Bay Oyster Co. v. Salazar*, 921 F.Supp.2d 972, 993 (N.D. Cal. 2013) ("Ordinarily, lost revenue does not establish irreparable harm," citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)).  Damage to a business's reputation and goodwill, however, is irreparable because it is unquantifiable, and thus cannot be fully remedied by financial damages.  *Rent–A–Center*, 944 F.2d at 603 ("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.  However, we have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm" (citation omitted)); *Skydive Ariz., Inc. v. Quattrocchi*, No. CV–05–2656–PHX–MHM, 2010 WL 1743189, *2 (D. Ariz. Apr. 29, 2010) ("Injuries to goodwill and business reputation are generally considered to be intangible and, as a result, irreparable"); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 616 F.Supp.2d 958, 974 (D. Ariz. 2009) (finding irreparable injury because plaintiff could not "determine the extent of damage caused by [defendant] to [plaintiff's] reputation and customer goodwill"); *MySpace, Inc. v. Wallace*,

Shaw states that the sale of the home is scheduled for July 9, 2014.[45]   The fact that a foreclosure sale is scheduled just days from now makes it clear that there is an imminent danger Shaw will lose his home.  Compare *Montes v. Quality Loan Service Corp.*, No. CV 09-5864 PSG (RCx), 2010 WL 114485, *5 (C.D. Cal. Jan. 5, 2010) (denying an application for temporary restraining order because "although Plaintiff alleges that a delay in enjoining the foreclosure would result in irreparable injury to Plaintiff, Plaintiff fails to specify when the foreclosure sale is scheduled to occur or that the alleged injury is imminent" (internal citation omitted)).  Shaw supports his assertion with evidence; he has submitted a declaration stating that the sale will take place on July 9, 2014,  and attaching the notice of trustee's sale postponing the sale date from June 4 to July 9, 2014.[46]  Accordingly, this factor weighs in favor of granting preliminary injunctive relief.

### 2.    The Likelihood That Shaw Will Succeed on the Merits of His Claim

As in his prior applications, Shaw contends that Specialized violated the Homeowners Bill of Rights.[47]   Specifically, Shaw contends that he has been a victim of "dual tracking," i.e., that Specialized negotiated a loan modification with him while simultaneously taking steps to conduct a non-judicial foreclosure sale.[48]  He also asserts that Specialized failed to provide a single point of contact.[49]  The court evaluates these allegations in turn.

---

498 F.Supp.2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable"); see also *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury").  Moreover, "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *Drakes Bay Oyster Co.*, 821 F.Supp.2d at 994 (quoting *Am. Passage Media Corp.*, 750 F.2d at 1474).  See also *Mahroom v. Best Western Intern., Inc.*, No. C 07–2351 JF (HRL), 2009 WL 248262, *3 (N.D. Cal. Feb. 2, 2009) ("'Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury,'" quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995)).  Although Shaw states that he raises animals for profit, (Shaw Decl., ¶ 8), he does not detail the effect the loss of his home will have on the business's reputation, goodwill, and overall viability.  Accordingly, the court declines to find that harm to Shaw's husbandry activities constitutes irreparable harm under the first *Winter* factor.

[45]Memo at 2; Shaw Decl., ¶ 2.

[46]Shaw Decl., ¶ 2, Exh. 1.

[47]Application at 1-2, 8-11.

[48]*Id.* at 1-2, 11.

[49]Shaw Decl., ¶ 10.

### a.    Dual Tracking

When a lender engages in dual tracking, "the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." *Jolley v. Chase Home Fin., LLC*, 213 Cal.App.4th 872, 904 (2013).  The Homeowners Bill of Rights, which became effective January 1, 2013, expressly prohibits dual tracking.  It states, in pertinent part:

> "(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

>> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and [the thirty day] appeal . . . has expired.

>> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

>> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification."  CAL. CIV. CODE § 2923.6(c).

Under Civil Code § 2924.12, an injunction is an available remedy for a violation of § 2923.6(c) if a trustee's deed upon sale has not been recorded.

Shaw alleges that Specialized sent him a notice of trustee's sale on March 7, 2014, while his loan modification application was pending.[50]  He contends Specialized acknowledged that it "usually does not stop foreclosure activity unless the review comes back positive."[51]  Shaw supports these allegations with evidence.  He states in his declaration that he submitted a complete loan modification application to Specialized by certified mail, return receipt requested, on December 27, 2013,[52] and

---

[50]Complaint, ¶ 9.

[51]*Id.*, ¶ 12.

[52]Shaw Decl., ¶ 3.

9

attaches a copy of the return receipt to his declaration.[53]  He states that he resent purportedly missing documents to Specialized by fax on February 18, 2014,[54] and that he called Specialized the next day to confirm receipt of his fax.[55]  He contends he spoke with a company representative who verified that Specialized had received his documents and that no additional documents were required to complete his loan modification package.[56]  Shaw reports that he was not notified of a decision on his loan modification application prior to the recording of the notice of trustee's sale in March 2014.[57]

In its July 3 order, the court observed that Shaw's prior loan modification triggered § 2923.6(g).[58]  That provision "exempts loan servicers from evaluating a modification application if the borrower has been evaluated for a loan modification prior to January 1, 2013."  *Saber v. JPMorgan Chase Bank, N.A.*, No. SACV 13–00812–DOC (JCGx), 2014 WL 255700, *2 (C.D. Cal. Jan. 23, 2014).  Specifically, it states:

> "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."  CAL. CIV. CODE § 2923.6(g).

The plain language of the statute applies to all prior loan modification applications, whether they were successful or unsuccessful.  While most cases construing § 2923.6(g) have involved a prior loan modification application that was denied, see, e.g., *Gilmore v. Wells Fargo Bank NA*, No. C 14-2389 CW, 2014 WL 2538180 (N.D. Cal. June 5, 2014), at least two courts have applied § 2923.6(g) to borrowers who, like Shaw, had a prior loan modification application approved.  See *Dias v. JP Morgan Chase, N.A.*, No.: 5:13–CV–05327–EJD, 2014 WL 2890255 (N.D. Cal. June 25, 2014)*; Mann v. Bank of America, N.A.*, No. 5:13–cv–02293–CAS (DTBx), 2014 WL 495617, *1 (C.D. Cal. Feb. 3, 2014).

---

[53]Shaw Decl., Exh. 2.

[54]Shaw Decl., ¶ 5.

[55]*Id.*, ¶ 6.

[56]*Id.*

[57]*Id.*, ¶¶ 7, 16, Exh. 6; RJN, Exh. 6.

[58]July 3 Order at 11-12.

The judicially noticed documents show that Shaw executed the prior loan modification agreement on August 18, 2009.[59] This demonstrates that he was "evaluated . . . for a first lien loan modification prior to January 1, 2013." CAL. CIV. CODE § 2923.6(g).

In its July 3 order, the court found that Shaw had failed to adduce evidence that he documented and submitted information of a material change in financial circumstances to Specialized.[60] Shaw now alleges that there were several material changes in his financial condition, including his filing of a Chapter 7 bankruptcy petition on October 9, 2009, his subsequent discharge on February 2, 2010,[61] and his loss of income and health benefits during this same period.[62] Specifically, he asserts he "had several material changes since the last loan modification in 2009 [and that he] submitted those financial documents to Defendant (SLS)."[63] He also states he "will proffer evidence that will show a material change in my financial circumstances since the date of the previous loan modification application and [that] that change was documented by me and submitted [to] Defendant (SLS)."[64]

Shaw's evidence fails to satisfy § 2923.6(g). Shaw's assertion that he "submitted those financial documents" to Specialized is vague, and does not identify any of the specific documentation he gave Specialized. This is inadequate because courts construing § 2923.6(g) have found that whether a plaintiff has satisfied the requirement that he document and submit information regarding a material change in financial circumstances depends on the specific documentation submitted. Compare *Gilmore*, 2014 WL 2538180 at *1 (finding that a borrower had satisfied § 2923.6(g), and granting a TRO, where the borrower "had a material change in his financial circumstances – his income increased and his financial obligations decreased by about $1,000 a month. He submitted a first lien loan modification application to Wells Fargo, documenting these changes"); *McLaughlin v. Aurora Loan Servs., LLC*, No. SACV 13–01653 JVS (RNBx), 2014 WL 1705832, *2, 6 (C.D. Cal. Apr. 28, 2014) (holding that a borrower satisfied § 2923.6(g) by alleging that she timely appealed the initial denial of her loan modification application, submitted evidence of her changed circumstances, including updated financial statements, which included her husband's income, thus substantially increasing the household income"); *Rosenfeld v. Nationstar Mortg. LLC,* No. 2:13–cv–04830–CAS–CWx, 2014 WL 457920, *4 (C.D. Cal. Feb. 3, 2014) (plaintiffs satisfied § 2923.6(g) where they "allege[d] that they notified Nationstar, by letter dated May 28, 2013, of a material change in their financial circumstances, namely, Sally Rosenfeld's elimination of her credit card debt"); *Vasquez v. Bank of America, N.A.*, No. 13–cv–02902–JST, 2013 WL 6001924, *8 (N.D. Cal. Nov.12, 2013) (finding that plaintiff had stated a claim under Civil Code § 2923.6(g) by alleging

---

[59]RJN, Exh. 3.

[60]July 3 Order at 12.

[61]Memo at 11.

[62]Shaw Decl., ¶ 8.

[63]*Id.*, ¶ 13.

[64]*Id.*, ¶ 15.

that "after gaining new employment with a higher income, she spoke to BANA representative Michelle Harrold, and at Ms. Harrold's request submitted a new loan modification application, 'including documentation of her increased income, on or around May 13, 2013'") with *Williams v. Wells Fargo Bank, NA*, No. EDCV 13–02075 JVS (DTBx), 2014 WL 1568857, *5 (C.D. Cal. Jan. 27, 2014) (merely sending a letter to the servicer stating that plaintiffs' monthly income had changed and they had had an increase in their expenses was insufficient to document a material change in circumstances since a loan modification was denied); *Ware v. Bayview Loan Servicing, LLC*, No. 13–CV–1310 JLS (NLS), 2013 WL 6247236, *5–6 (S.D. Cal. Oct. 29, 2013) (letter stating that borrower's financial circumstances, income and expenses had materially changed since they last submitted an application for loan modification was insufficient); *Winterbower v. Wells Fargo Bank, N.A.*, No. SA CV 13–0360–DOC–MLGx, 2013 WL 1232997, *3 (C.D. Cal. Mar. 27, 2013) (letter sent to lender by plaintiff's attorney stating that plaintiffs' expenses had decreased from $25,000 per month to $10,000 per month did not adequately document a change in financial circumstances for purposes of § 2923.6(g)).   Absent any evidence of the specific documentation Shaw submitted to Specialized, and the specific material change the documentation supposedly reflected, the court cannot find it is likely that Shaw will be able to show Specialized was required to comply with § 2923.6 and not engage in dual tracking.[65]

### b.    Single Point of Contact

Shaw also alleges that Specialized failed to provide a single point of contact.[66]   Civil Code § 2923.7 requires that lenders designate a single point of contact "to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley*, 213 Cal.App.4th at 904–05.   The statute provides:

"(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

---

[65]Shaw's assertion that he "will proffer evidence" of a material change, and that he submitted to documentation of the change to Specialized (*id.*, ¶ 15), inadequately supports the extraordinary remedy of injunctive relief he seeks.   Shaw must adduce the evidence he says he can produce in support of his application, not promise to do so later.

[66]Memo at 4; Shaw Decl., ¶¶ 10, 11.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

. . .

(e) For purposes of this section, 'single point of contact' means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." CAL. CIV. CODE § 2923.7.

As with violations of the dual tracking provision, Civil Code § 2924.12 states that an injunction is an appropriate remedy for violation of § 2923.7 if a trustee's deed upon sale has not been recorded.

In its prior orders, the court noted that Shaw had not shown a likelihood of success on the merits of his § 2923.7 claim because he did not allege that he ever requested a single point of contact. Shaw cured this defect in his fourth application. He states that he "requested a single point of contact more than once,"[67] but that he "did not speak to the same person each time I call[ed]. I would always speak to someone that had no knowledge of my case and [would] have to read the file and tell me what they [thought was] going on, or tell me to call back in a couple of days."[68] Shaw also states that "[m]ost of the time I call in to Specialized Loan Servicing, LLC it would go to a recording that was busy. The message would give me the option to speak to someone else."[69] These statements demonstrate a likelihood of success on the merits of his § 2923.7 claim. Shaw states that he requested

---

[67]Shaw Decl., ¶ 14.

[68]*Id.*, ¶ 10.

[69]*Id.*, ¶ 11.

a single point of contact,[70] but that he always spoke with different representatives or was routed to a machine recording.  Although § 2923.7 provides that a single point of contact need not be a single person, and may include a team of individuals "knowledgeable about the borrower's situation and current status," CAL. CIV. CODE § 2923.7(e), Shaw asserts that the individuals with whom he spoke had no knowledge of the facts of his case.   See *Lapper v. SunTrust Mortg. N.A.*, No. 2:13–cv–04041–ODW (MANx), 2013 WL 2929377, *1, 3 (C.D. Cal. June 7, 2013) (finding a likelihood of success on the merits of plaintiff's § 2923.7 claim, where plaintiff alleged that she was "repeatedly hung up on, transferred into nothingness, [and] transferred to multiple persons with no knowledge of her file").

Because Shaw has demonstrated a likelihood of success on the merits of his single point of contact claim, this factor weighs in favor of granting his application for injunctive relief.

### 3.     The Balance of Hardships

If the sale occurs, Shaw will be deprived of his home.  This tips the balance of hardships in his favor.  See *Williams v. Wells Fargo Bank, N.A.*, No.: 5:13–CV–03387–EJD, 2013 WL 5444354, *3 (N.D. Cal. Sept. 30, 2013) ("The balance of the hardships between the parties tips in Plaintiff's favor because this case involves the sale of Plaintiff's home"); *Vazquez v. Select Portfolio Servicing*, No. 13–cv–03789–JST, 2013 WL 5401888, *2 (N.D. Cal. Sept. 26, 2013) ("Were a temporary restraining order to issue, 'it is hard to conceive of a serious hardship to Defendants . . . because any security they have in the real property would still remain,' provided the security is valid.  By contrast, the hardship to Plaintiff, were the Court to deny Plaintiff's application for a temporary restraining order [enjoining the sale at foreclosure of plaintiff's home], would be significant such that the balance of hardships tips sharply in Plaintiff's favor").  This factor therefore weighs in favor of granting preliminary injunctive relief.

### 4.     The Public Interest

Courts have held that it is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before they are evicted from their homes.  *Sencion v. Saxon Mortg. Servs., LLC*, No. 5:10–cv–3108 JF, 2011 WL 1364007, *3 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes").  See also *Vazquez*, 2013 WL 5401888 at *3 (concluding it was in the public interest to issue a temporary restraining order enjoining the sale at foreclosure of

---

[70]Although Shaw does not identify the date(s) on which he requested a single point of contact, he does state that the parties began to negotiate a loan modification on December 27, 2013 (Memo at 3), and describes his efforts to obtain a modification following that date (*id.* at 4-7).  This strongly suggests that Shaw's requests for a single point of contact occurred subsequent to the January 1, 2013 effective date of § 2923.7.

plaintiff's home); *Cruz v. Washington Mut. Bank*, No. 11CV471 DMS (POR), 2011 WL 883098, *2 (S.D. Cal. Mar. 14, 2011) ("[T]here is an interest in accurately resolving disputes over ownership of real property and it is in the public interest to permit homeowners the opportunity to pursue what appear to be valid claims before their homes are sold pursuant to a foreclosure sale"); *Heil v. Wells Fargo Bank*, No. C06-02002 MJJ, 2006 WL 1320301, *4 (N.D. Cal. May 3, 2006) ("Because Plaintiffs face the risk of losing real property based on Wells Fargo's purported mishandling of Plaintiffs' payments, the Court finds that the public interest in protecting real property from erroneous deprivation weighs in Plaintiffs' favor"). Accordingly, the court finds that this factor weighs in favor of granting preliminary injunctive relief.

### 5.    Conclusion Regarding Preliminary Injunction

Shaw has demonstrated a likelihood of success on the merits of his single point of contact claim. He has also shown that he will suffer imminent irreparable harm in the absence of an injunction. The balance of hardships therefore tips in his favor, and the public interest favors entry of an injunction. Consequently, if Shaw complies with the bond requirement discussed below, the court will enter an injunction precluding Specialized from proceeding with the sale at foreclosure of Shaw's residence until such time as it proffers evidence that it has complied with § 2923.7.

### C.    Bond

The final issue the court must address is whether Shaw should be required to post a bond, and, if so, in what amount. See FED.R.CIV.PROC. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). Shaw asks that no bond be required, and that if the court does require a bond, it set the amount at $1.00.[71] This is insufficient. Rather, the court concludes that Shaw should be required to post a bond equal to the monthly payments required under the 2009 loan modification. See *Eberling v. R.M. Sterling Mortg. Servs., Inc.*, No. SACV 10–1831 AG (RNBx), 2011 WL 2419465, *1-2 (C.D. Cal. Apr. 6, 2011) (rejecting defendant's argument that the court should require bond in the amount needed to bring a loan current plus monthly payments, and instead setting the bond in the amount of plaintiff's monthly payment); *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 U.S. Dist. LEXIS 112004, *1 (S.D. Cal. Oct. 21, 2010) ("In order for this injunction to remain in effect, the Court ordered Plaintiff to deposit with the Clerk of the Court monthly security payments of $2,452.52, representing the regular monthly payments that are owed on the note, which is secured by the deed of trust"). See also *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, *6 (N.D. Cal. July 6, 2011) ("The Court finds that a bond in the amount of $2,000 per month [is] appropriate. It approximates the fair rental value of the property as well as a fair rate of return on $525,000, the current value of the property"); *Magana v. Wells Fargo Bank, N.A.*, No. C

---

[71]Memo at 13.

11–03993 CW, 2011 WL 4948674, *2 (N.D. Cal. Oct. 18, 2011) (requiring bond in the amount of $3,000 per month, the approximate fair rental value of the house).  Consequently, the court will enter a preliminary injunction on the condition that Shaw pay a bond in the amount of $1,659.01 for the month of July 2014, and $1,927.38 for each month thereafter, which are the monthly payment amounts required under the loan modification agreement.[72]  Should the bond remain in effect after August 1, 2015, the monthly amount will increase to $2,210.67 effective August 1, 2015; to $2,506.57 effective August 1, 2016; and to $2,572.61 effective August 1, 2017, as required by the modified loan.[73]

### III.  CONCLUSION

For the reasons stated, Shaw's application for a preliminary injunction is granted.  The court will enter a preliminary injunction provided that he pays, no later than 9:00 a.m. on July 9, 2014, a bond in the amount of $1,659.01, and no later than the fifteenth of every month thereafter, a bond in the amount of $1,927.38.[74]  This bond condition can be satisfied by depositing the required amount in the trust account of Specialized's attorneys.  If the $1,659.01 payment is made prior to 9:00 a.m. on July 9, 2014, and Shaw so advises the court, it will enter a preliminary injunction.  If the payment is not made, the court will not enter an injunction.

Once Specialized provides proof that it has complied with Civil Code § 2923.7, the court will dissolve the preliminary injunction.  The injunction will also be dissolved upon submission of evidence that Shaw has not made a required payment on the bond.

---

[72]RJN Exh. 3 at 3.

[73]*Id.*

[74]As noted, should the bond remain in effect after August 1, 2015, the monthly amount will increase to $2,210.67 effective August 1, 2015; to $2,506.57 effective August 1, 2016; and to $2,572.61 effective August 1, 2017, as required by the modified loan.